No. 3793

Second Circuit

———

## STATE OF LA. EX REL. SILL v. EXAMINING BOARD OF MASTER ELECTRICIANS OF THE CITY OF SHREVEPORT

———

(July 5, 1930. Opinion and Decree.)

———

Blanchard, Goldstein, Walker & O'Quin, of Shreveport, attorneys for plaintiff, appellant.

Galloway & Johnson, of Shreveport, attorneys for defendant, appellee.

ODOM, J. Under an ordinance of the city of Shreveport, no person is permitted to engage in the business of installing or repairing electric motors, dynamos, conductors, fixtures, etc., without first obtaining a master electrician's certificate from the examining board of master electricians. Eddie O. Sill, the relator, applied to the board for such certificate. The board gave him the examination required by the ordinance, examined and graded his papers, but refused to grant the certificate on the ground that he failed to make the prescribed grade, which is 75 per cent. Whereupon relator instituted this mandamus proceeding against the board and its members praying that "a writ issue commanding it to certify relator to be entitled to a certificate as a Master Electrician and to cause such certificate to be issued to him." The lower court rejected his demands, and he prosecutes this appeal.

We shall not go into the detail of stating all issues raised by the pleadings, nor shall we discuss the legal points presented in the preliminary stages of this proceeding, for the reason that the issues originally presented have narrowed to one, and the law points raised by counsel for relator have been conceded by counsel for the board, and those raised by counsel for the board are conceded by counsel for relator.

It is conceded by both sides that the duties and functions of the board of examiners and its members as relate to the matter of grading examination papers of an applicant for a certificate and the fixing

of the grade or percentage made are purely discretionary; that the active members of the board, who are themselves master electricians and appointed for the purpose of conducting such examinations, are the sole judges of the proficiency and skill of an applicant for a certificate; and that being true, it is conceded that mandamus will not lie to hinder, regulate or control their actions in regard to such matters, unless it manifestly appears that their actions have been arbitrary, unjust, or discriminating.

Counsel for relator, in brief filed in the district court, say:

"We do not ask the Court to examine relator's papers and determine whether or not he deserved a passing grade."

Counsel do not ask that we do that nor could they reasonably make such request. But, in the elaborate brief filed with us, they say:

"The relator contends:
"(1) That the action of the Board in the grading of his paper and refusal of certificate, influenced by the interference of others, was arbitrary and not a bona fide exercise of the limited discretion vested in such boards;
"(2) That he is entitled to a certificate since it is admitted that the two best grades would have brought about a result of more than 75 per cent."

Arguing the first point raised, counsel say that the testimony adduced on the trial establishes the fact as contended by them that the board and its members were swayed against relator by outside influences, that the master electricians of the city did not want relator qualified, and that they intervened and influenced the members of the board to so grade relator's papers as to cause him to fail, regardless of his merits, and therefore the percentage found was purely arbitrary.

On this point, the district judge before whom the case was tried on its merits, in a written opinion in which he discussed in detail both the facts and the law, said:

"There is nothing tangible in this record, from what we can conclude, that the Board acted arbitrarily in its grading of relator's answers."

We fully concur in that view. There is nothing whatever in the testimony to indicate that the members of the board were swayed in the slightest degree by outside influences.

According to the testimony of the members of the board, it usually takes one day for an applicant to answer the questions. The examination of relator extended into the fourth day, and was only partially completed, and there was some objection to the length of time given relator raised by the Electrical Contractor's Association. The board suspended the examination for a short time and held a meeting. What took place at the meeting is not disclosed. The examination was resumed and completed. The active members of the board, the electricians who conducted the examination, say they received no impression from the members of the Electrical Contractor's Association as to whether they wanted a certificate granted to relator or whether they did not. They say further that they had no interest in the matter except to perform their duty as members of the board of examiners; that they entertained no feelings of prejudice against the applicant; that it was a matter of indifference to them whether relator obtained a certificate or whether he did not. It is argued that the mere fact that these outsiders intervened is sufficient basis for a holding that the members of the board were influenced and acted arbitrarily

against relator. We cannot so hold, in the absence of any testimony that the contractors did by letter or word of mouth communicate their objections, if indeed they had any, to relator's obtaining a certificate, and in the absence of any showing that the members knew or suspected that the outsiders were against relator or that the board or its members were or could have been influenced had such desires been communicated.

Relator's papers were graded by three members of the board who are electricians. We have carefully gone into the method of examining and grading, and see nothing unfair or discriminating about it. The questions given relator to answer were the same or similar to those given other applicants, and were such as to test his knowledge of the business of installing electric motors, dynamos, fixtures, etc. When relator had finished his answers, the board had a meeting—that is, the three electricians got together with all papers before them, whereupon one member, it seems, read the question, another read the answer thereto, and the third kept a record of the grades. The questions and the answers were read in the presence of all three members of the board and, if the three considered the answer correct, a grade or percentage of 100 was allowed, and this was marked on the face of the paper. If it was found that an answer to the question was not wholly but partially correct, the three members of the board in consultation established and fixed a grade. If there was a difference of opinion among the three members of the board as to the proper grade, each member stated the grade of percentage which he thought the particular answer would merit; the different grades or percentages as fixed by the members were totalled and divided by 3, thereby obtaining an average, which average was finally

agreed upon as the correct grade or percentage to be given under that particular question. At the conclusion of the examination and the fixing of the grade agreed upon for each separate question and answer, the board tabulated the results, added the grades allowed under each question and answer, and divided the total by 50, the number of questions asked. The result was an average of 74.3.

As already stated, this was the method pursued in all similar cases, and it does not appear to this court to be unfair.

The second point raised is that the two best grades should have been accepted, that is, in all cases where there was a difference in opinion among the three members as to what percentage should be allowed under a given answer, the two highest should be accepted and the low grade eliminated. It is purely discretionary with the board as to what method it should pursue in arriving at the proper grade or percentage an applicant should be given on his examination. The court will not interfere and substitute its judgment for that of the board in such matters. The method pursued in this case was the same as used in all similar cases, and appears to be fair.

It is finally suggested that, inasmuch as the applicant's grade was 74.3 or .7 of 1 per cent below the passing grade of 75 per cent, he should be given a certificate. The court cannot order that such be done. The passing grade fixed by the ordinance is 75 per cent. An applicant who fails to make that grade is not entitled to the certificate. This applicant failed to make the grade. The court will not interfere.

The judgment appealed from is correct, and it is affirmed, with all costs.